E-FILED
Wednesday, 09 November, 2016  03:03:51 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| ANTHONY JORDAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil No. 15-02294 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Petitioner Anthony Jordan's Motion for Bond (d/e 9), in which he requests bond pending a determination of the motion he filed pursuant to 28 U.S.C. § 2255. Petitioner's motion is GRANTED. Petitioner has shown that he has raised a substantial constitutional claim upon which he has a high probability of success and that exceptional circumstances exist which require bail to make the habeas remedy effective. Although Petitioner, in his underlying criminal case, entered into a plea agreement that included a waiver of his right to collaterally attack his sentence, the Court finds that the waiver does not preclude Petitioner's challenge to his status as a career offender, which is

grounded in the rights bestowed upon him by the Due Process Clause.

## I. BACKGROUND

In February 2004, Petitioner was charged by indictment with one count of distributing more than five grams of a substance containing crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B).  United States v. Jordan, Central District of Illinois, Urbana Division, Case No. 04-CR-20008 (hereinafter, Case No. 04-20008), Indictment (d/e 1).  On May 12, 2004, Petitioner and the Government entered into a plea agreement, in which Petitioner agreed to plead guilty to the charged offense.  Case No. 04-20008, Plea Agreement and Stipulation of Facts (Plea Agreement) (d/e 7), ¶ 4.  Pursuant to the plea agreement, Petitioner also waived his "right to collaterally attack the conviction and/or sentence."  Case No. 04-20008, Plea Agreement, ¶ 9.  In the Presentence Investigation Report prepared in anticipation of Petitioner's sentencing, Petitioner's total offense level was increased from 28, the base offense level that applied because Petitioner was deemed responsible for 20.5 grams of cocaine base, to 34 on the basis that Petitioner was a career offender.  Case No. 04-20008,

Presentence Investigation Report (PSR), ¶ 20.  Although only two qualifying felony offenses are needed to label a defendant a career offender under § 4B1.1 of the United States Sentencing Guidelines, the PSR listed three felony convictions supporting Petitioner's classification as a career offender– one for aggravated battery, one for mob action, and one for domestic battery.  See Case No. 04-20008, PSR, ¶ 20.

Based on his total offense level of 34 and his criminal history category of VI, which would not have changed absent his career offender designation, Petitioner's imprisonment guideline range at sentencing was 262 to 327 months.  Had Petitioner's total offense level been 28, his imprisonment guideline range would have been 140 to 175 months.   On July 13, 2006, Petitioner was sentenced to 262 months of imprisonment.  See Case No. 04-20008, Judgment (d/e 68).  Although Petitioner appealed, he later filed a motion to dismiss the appeal, which the Seventh Circuit granted.  See Case No. 04-20008, Order (d/e 80).

Petitioner timely filed his first § 2255 petition in February 2008. See Jordan v. United States, Central District of Illinois, Springfield Division, Case No. 08-CV-02048 (hereinafter, Case No.

08-02048), Motion Under 28 U.S.C. § to Vacate, Set Aside, or
Correct Sentence by a Person in Federal Custody (d/e 1).  The
motion was denied on April 10, 2008.  <u>See</u> Case No. 08-02048,
Opinion (d/e 6).  Petitioner subsequently filed two motions
pursuant to Rule 60(b) of the Federal Rules of Civil Procedure
seeking to vacate the denial of his initial § 2255 motion.  <u>See</u> Case
No. 08-02048, Motion for Relief from Judgment Under Federal
Rules of Civil Procedure Rule 60(b)(6) (d/e 20); Case No. 08-02048,
Motion for Relief from Judgment Under the Federal Rules of Civil
Procedure Rule 60(b)(4) (d/e 49).  Both motions were denied.  <u>See</u>
Case No. 08-02048, Opinion (d/e 26); Case No. 08-02048, Order
(d/e 58).

     In 2015, the Supreme Court decided <u>Johnson v. United States</u>,
in which it held that a residual clause of the Armed Career Criminal
Act (ACCA), which classified an offense as a "crime of violence" if it
involved "conduct that presents a serious potential risk of physical
injury to another," was unconstitutionally vague.  135 S. Ct. at
2554, 2562-63.  In light of <u>Johnson</u>, the Seventh Circuit granted
Petitioner's application for authorization to file a successive § 2255
motion. <u>See</u> Order (d/e 2).

## II. ANALYSIS

"[F]ederal district judges in habeas corpus and section 2255 proceedings have inherent power to admit applicants to bail pending the decision of their case . . . ." Cherek v. United States, 767 F.2d 335, 337 (7th Cir. 1985). The Seventh Circuit has not yet formulated a standard as to when a judge may grant a motion for bond in the context of a § 2255 proceeding other than to state that the power to grant bond in such circumstances should "be exercised very sparingly." Id. A case from the Urbana Division of this District has held, however, that bail should be granted pending post-conviction habeas corpus review only "when the petitioner has raised substantial constitutional claims upon which he has a high probability of success" and "extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." Douglas v. United States, No. 06-CV-2113, 2006 WL 3627071, at *1 (C.D. Ill. Dec. 11, 2006) (citing Landano v. Rafferty, 970 F.2d 1230, 1239 (3d Cir. 1992)). Petitioner has met both prongs of this test with respect to his pending § 2255 motion.

A.   **Petitioner has raised a constitutional claim upon which he has a high probability of success.**

Before <u>Johnson</u>, but after Petitioner's sentencing, the Seventh Circuit held that battery, as defined by Illinois law, was not a "crime of violence," as that term was defined by the United States Sentencing Guidelines, because the offense could be committed by making "physical contact of an insulting or provoking nature with an individual." <u>United States v. Evans</u>, 576 F.3d 766, 767-68 (7th Cir. 2009) (citing 720 ILCS 5/12-3(a)).  Because a person commits domestic battery in Illinois if he knowingly and without justification "makes physical contact of an insulting or provoking nature with any family or household member," 720 ILCS 5-12-3.2(a), domestic battery does not qualify as a "crime of violence."  Further, the Seventh Circuit has held that the Illinois offense of mob action could only be classified as a "crime of violence" under the residual clause of the career offender guideline. <u>See</u> <u>United States v. Cole</u>, 298 F.3d 659, 661 (7th Cir. 2002) (noting that the Illinois mob action statute "does not have as a necessary element the use or threatened use of physical force against a person" and that mob action is not specifically enumerated as a crime of violence in the

career offender guideline).  The Illinois mob action statute encompasses several crimes with varying elements.  <u>See </u>720 ILCS 5/25-1.  The statute is therefore divisible, meaning that the Court can use a modified categorical approach, which allows the Court to look at certain documents, such as the indictment, jury instructions, and plea agreement, to determine which specific offense Petitioner committed.  <u>See</u> <u>Mathis v. United States</u>, 136 S. Ct. 2243, 2249 (2016).  But because all offenses encompassed within the Illinois mob action statute can be committed without the use or attempted use of violent physical force against another person, Illinois mob action still fails to classify as a "crime of violence" under the modified categorical approach.  Accordingly, if the Supreme Court promulgates a new rule in <u>Beckles</u> that the "crime of violence" definition in the United States Sentencing Guidelines is unconstitutionally vague and determines that this rule applies retroactively, Petitioner will not have the two felony convictions needed to be classified as a career offender.  The Government does not dispute this conclusion in its opposition to Petitioner's Motion for Bond.

A large majority of federal appellate circuits have held or assumed that <u>Johnson</u>, a holding that has since been made retroactive, <u>see</u> <u>Welch v. United States</u>, 136 S. Ct. 1257, 1268 (2016), extends to the United States Sentencing Guidelines.  <u>See</u> <u>United States v. Hurlburt</u>, 835 F.3d 715, 725 (7th Cir. 2016) (discussing cases).  Further, the Supreme Court is scheduled to hear a case this month involving whether <u>Johnson</u> should be extended to the guidelines from the lone circuit that has held that <u>Johnson</u> does not apply to the Sentencing Guidelines.  <u>See</u> <u>Beckles v. United States</u>, 616 F. App'x 415, 416 (11th Cir. 2015), <u>cert. granted</u>, 136 S. Ct. 2510 (2016).  Given the overwhelming consensus that the rule promulgated in <u>Johnson</u> extends to the guidelines, the chance that Petitioner will prevail on his pending § 2255 motion is high.

The Government argues that Petitioner's chance of success is nothing more than a "coin flip" because no court of appeals has held that the extension of <u>Johnson</u> to the United States Sentencing Guidelines is to be applied retroactively.  However, the fact that the Supreme Court made <u>Johnson</u> retroactive, <u>see</u> <u>Welch v. United States</u>, 136 S. Ct. at 1268, leads this Court to the conclusion that a

holding in <u>Beckles</u> that the guidelines are subject to vagueness challenges, which will result in the residual clause of the career offender guideline being deemed unconstitutionally vague, will also be made retroactive, especially given that successive § 2255 motions, if not based on newly discovered evidence, must be based on "a new rule of constitutional law, <u>made retroactive to cases on collateral review by the Supreme Court</u>, that was previously unavailable."  28 U.S.C. § 2255(h)(2) (emphasis added).  In short, the Court finds that Petitioner has shown a high probability of success on the constitutional claim on which his pending § 2255 motion is based.

**B.    Exceptional circumstances justify Petitioner's release on bond.**

Petitioner has served approximately 153 months in prison for the offense for which he was sentenced in his underlying criminal case.  If his § 2255 motion is successful, Petitioner will be resentenced without having the designation of a career offender.  Although Petitioner's imprisonment guideline range would have been 140 to 175 months in 2006 without his career offender designation, his guideline range today without that designation

would be 70 to 87 months, a result of certain "drug amendments" to the guidelines which lowered the base offense level for a defendant responsible for 20.5 grams of cocaine base to 20. <u>See</u> U.S.S.G. § 2D1.1(c)(10).  The result is that if Petitioner's pending § 2255 motion is successful, he will have already served a sentence approximately five-and-a-half years longer than the top of the current guideline range for his offense.

Further, the Court finds that Petitioner is a good candidate for bond.  He has a supportive mother who plans to provide him with a place to live.  Moreover, records received by the Court from FCI Hazelton and the United States Probation Office, which are to be filed under seal, show that Petitioner has completed numerous courses and obtained his GED certificate while in prison.  Although records appear to indicate that Petitioner refused entry in the Bureau of Prisons' Residential Drug Abuse Program, he did complete a 40-hour substance abuse education course.  And although the Government correctly notes that Petitioner has nine infractions during his time in the custody of the Bureau of Prisons, the Court notes that only one of those infractions occurred after August 2010 and that the most recent infraction occurred in

September 2013.  With respect to his infraction that resulted in another inmate being sent to the hospital, Petitioner has indicated that he was acting in self-defense.  Even if the circumstances of the incident are not exactly as Petitioner described, as some records suggest, the fact that the altercation took place in April 2010, more than six-and-a-half years ago, convinces the Court that Petitioner is not inherently dangerous to others while released on bond.

**C.    Petitioner's plea agreement waiver of his right to collaterally attack his sentence does not prevent him from challenging his career offender designation.**

In response to Petitioner's request for bond, the Government strenuously argues that Petitioner's waiver of his right to collaterally attack his sentence is fatal to his § 2255 motion, thereby making his release on bond inappropriate.  The Seventh Circuit has "consistently rejected arguments that an appeal waiver is invalid because the defendant did not anticipate subsequent legal developments." United States v. McGraw, 571 F.3d 624, 631 (7th Cir. 2009).  And although not specifically addressed by the parties, the Court notes that the collateral attack waiver in Petitioner's plea agreement does not contain language that allows for appeals based on subsequent changes in the landscape of sentencing law.  The

Government correctly points out that the Seventh Circuit has held that a defendant's appeal waiver was valid despite the fact that the plea agreement was entered into prior to the Supreme Court's ruling in United States v. Booker, 543 U.S. 220 (2005).  United States v. Lockwood, 416 F.3d 604, 608 (7th Cir. 2005); United States v. Bownes, 405 F.3d 634, 636-37.  The Government argues that these cases compel a holding that Petitioner's collateral attack waiver is applicable to a challenge based on Johnson and a denial of Petitioner's Motion for Bond.  But while Booker dealt with a criminal defendant's protection "against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged" and the protection of his "right to demand that a jury find him guilty of all the elements of the crime with which he is charged," Booker, 543 U.S. at 230, Johnson was based on upon the rights that are bestowed on criminal defendants by the Due Process Clause.  Johnson, 135 S. Ct. at 2558 (noting that the ACCA residual clause at issue "produces more unpredictability and arbitrariness than the Due Process Clause tolerates").

The distinction is significant in light of the fact that the Seventh Circuit has held that "there are at least some due process exceptions to a waiver of appellate review." United States v. Adkins, 743 F.3d 176, 192 (7th Cir. 2014).  The Seventh Circuit has noted four distinct scenarios where a plea agreement waiver will not prohibit a defendant's subsequent challenge to his sentence: (1) the sentence is based on "constitutionally impermissible criteria, such as race"; (2) the sentence is in excess of the applicable statutory maximum sentence; (3) there is a deprivation of "some minimum of civilized procedure," such as where a sentence was imposed after a trial "by 12 orangutans"; and (4) the defendant received ineffective assistance of counsel in entering into the plea agreement.  Id.; Bownes, 405 F.3d at 637.  The Government argues that these four scenarios are the only ones in which a criminal defendant can get around a plea agreement waiver of his right to collaterally attack his sentence.  But this argument ignores the fact that the Seventh Circuit expanded the list when it decided Adkins, as the court allowed a criminal defendant who had waived his appellate rights pursuant to a plea agreement to challenge the vagueness of one of the terms of his supervised release.  See Adkins, 743 F.3d at 193.

This holding was based on the idea that waivers must give way to ensure "fundamental fairness to the particular defendant and the fundamental legitimacy of the judicial process generally." Id.  Just as these principles apply to allow for challenges to vague conditions of supervised release, so should they be applied to allow for challenges to vague sentencing guidelines that have the ability to dramatically increase a defendant's imprisonment guideline range. The Due Process Clause demands as much.

Rather than explain how Adkins does not operate to allow Petitioner to challenge his career offender designation despite his waiver of collateral attack rights, the Government merely accuses Petitioner of "sandbagging" by not citing Adkins in his Motion for Bond.  But as Petitioner correctly points out, he cited Adkins in his March 2016 reply to the Government's response to his amended § 2255 motion.  See Reply to Government's Response to Petitioner's Amended Motion to Vacate Sentence Under 28 U.S.C. § 2255 (d/e 7).  The Government had ample time to analyze Adkins, and given the case's holding, the Government should have anticipated that it would impact the Court's analysis of Petitioner's Motion for Bond despite the fact that it was not cited in the motion.

### III. CONCLUSION

For the reasons stated, the Court chooses to exercise its inherent authority to release Petitioner on bond pending the resolution of his amended § 2255 motion.  Petitioner's Motion for Bond (d/e 9) is GRANTED.  The Bureau of Prisons is ORDERED to release Petitioner on recognizance bond forthwith.  This case is hereby STAYED pending the Supreme Court's decision in <u>Beckles v. United States</u>.

ENTER: November 9, 2016.

<u>/s/ Sue E. Myerscough</u>
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE